DAVID WARNER, PLAINTIFF-RESPONDENT, v. FRANK M. DAVIS, OR IN THE ALTERNATIVE THE WESTERN UNION TELEGRAPH COMPANY, A CORPORATION CONDUCTING BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Submitted January 26, 1932—Decided April 12, 1932.

Before Justices CAMPBELL, LLOYD and BODINE.

For the plaintiff-respondent, *Hyman Brodsky.*

For the defendant-appellant, *Edwards, Smith & Dawson.*

PER CURIAM.

This is an appeal from a judgment for $500 in an action in tort returned by a jury in the Hoboken District Court.

Dr. David Warner, a dentist, on the afternoon of July 17th, 1931, tripped over an iron bar designed to support iron doors leading to a cellar in the building occupied by the defendant. He testified: "Both doors were open, and one end of the bar was placed in the eye of the door, when the bar is in position, the correct position to keep the door open; the other end was extending on the other side of the sidewalk."

Immediately after the occurence, plaintiff entered the defendant's place of business and told a young lady, who appeared to be in charge, of his fall and the careless manner in which the door had been left open. He then observed one of the defendant's messenger boys leave the office and properly adjust the bar.

Shortly before the accident, a bystander had seen a boy in one of the defendant's uniform, go to the cellar by means of the sidewalk door and return therefrom with a bicycle bearing the defendant's name. There was also testimony that the iron bar was not properly adjusted. The boy then placed the bicycle in a rack in front of the office provided for that purpose, and bearing defendant's name.

The defense was, assuming that the boy did just what was testified to, that such act was not one for which the defendant was liable, because the boy had no permission to go to the cellar and had explicit orders to the contrary; that no one of the defendant's employes had a right to go to the cellar without orders from the manager, who had given none that day. The proofs showed that there were no locks on the doors, and that the defendant had the use of the back part of the cellar for the storage of records. It was further argued that the presumption arising from the proved facts

was rebutted by the defendant's uncontradicted proofs and that the defendant should have had a directed verdict.

"If the act resulting in the injury complained of was within the scope of the servant's employment the master will be liable therefor, although the act was in violation of the master's instructions as to the method of performing the work or expressly forbidden by him, and without regard to the servant's motive. This is so, because the test of the master's responsibility for the acts of his servants is not whether such act was done in accordance with the instructions of the master to the servant, but whether it was done in the prosecution of the business that the servant was employed to do. If the master undertakes to determine for himself the manner in which his servant shall perform his prescribed duties, the obligation is on him to see that such instructions are carried out and that the servant does not substitute his own methods for those of his master. Any other rule, it has been said, would in a measure nullify the doctrine of *respondeat superior.*" 39 *Corp. Jur.* 1283, § 1477-f.

In *Price* v. *Simon,* 62 *N. J. L.* 153, it appears that the defendant owned an ice wagon from which this servant delivered ice to his customers in Camden. At the time of the injury complained of the servant had delivered a piece of ice and was returning to the wagon with the ice-tongs open. When he reached Third street he ran into the plaintiff, who was a child five years old, and cut his hand and his head with the ice-tongs. Mr. Justice Van Syckel said: "The liability of the master for the negligent act of the servant is solved by determining whether the injury was inflicted while the servant was performing an act in the course of his employment by the master. His duty to the master was to deliver ice from the wagon to customers. When he was returning from the customer's house to the wagon with the ice-tongs he was acting in the business of the master as clearly as he was when he took the ice in, or as when he was driving the wagon. He could not conduct the business in which he was employed without going to the customer's house and returning to the wagon. In doing these acts he represented the master, and for his negligence the master is liable."

In *Pederson* v. *Edward Shoe Corp. and Polinsky,* 104 *N. J. L.* 566, the plaintiff Astrid Pederson, the wife of the co-plaintiff, while walking along Smith street, in the city of Perth Amboy, about three o'clock in the afternoon, on May 28th, 1926, stepped into a cellar opening, immediately fronting the store of the Edward Shoe Corporation, fell upon her left leg, and thereby sustained a fracture of the fibula bone of that limb. The cellar aperture was not continuously open, but upon this occasion almost coincidently with her arrival it was thrust open, under circumstances which present the material inquiry of the defendant's liability for the ensuing accident. The jury found a verdict for the two plaintiffs, as husband and wife, against the coal dealer, Charles Polinsky. Mr. Justice Minturn said: "Polinsky's duty under his contract obviously was to deliver the coal at such place upon the vendee's premises as the latter might indicate. If in the effort to complete the delivery his employe found it necessary to prepare the necessary opening in the walk, for the purpose, and assumed the task of so doing, the act thus performed manifestly was within the lines of his employment."

In *McCann* v. *Consolidated Traction Co.,* 59 *N. J. L.* 481, the plaintiff's horse was so frightened as to cause injury by a street sprinkler operated by the defendant over its trolley lines. The real cause of the fright was due to two black coats hung from a rear projection which swung violently. Mr. Justice Lippincott said: "It would seem as if it was not material whether these coats were placed there by the defendant company, by its employes or by a stranger, so long as the existence of them, in this position, created a dangerous situation, of which the employes of the defendant had knowledge and still continued to operate the car. The fact is that they were upon a car sprinkler of the defendant company which was being operated by its employes, who were bound to the exercise of reasonable care in its operation and thus protect others from injury. * * * The general rule is a very clear one, that the master is liable for any act of his servant done within the scope of his employment, and 'if a

servant is acting in the execution of his master's orders, and by his negligence causes injury to a third party, the master will be responsible, although the servant's act was not necessary for the proper performance of his duty to his master or was even contrary to his master's orders.'

"There is, perhaps, no rule of law more firmly settled than that a master is ordinarily liable to answer, in civil suits, for tortious act of his servant, if the act be done in the course of his employment in his master's service. This is on the principle of the maxim *respondeat superior*, and also, of the maxim *'qui facit per alium facil per se.'* The master is liable, although he did not authorize or even know of the servant's act or negligence, and although he disapproved of or forbade it, if the act was done in the course of the servant's employment, or, as it is sometimes expressed, within the scope of his authority." *Aycrigg's Ex'rs* v. *New York and Erie Railroad,* 30 *N. J. L.* 462.

"To rebut the presumption of liability of a master for damage consequently upon the negligent act of a servant, done within the apparent scope of the latter's employment, it must be shown either that the act was purely wanton or that it was not performed in furtherance of any duty within the actual scope of the servant's authority. *Rhinesmith* v. *Erie Railroad Co.,* 76 *N. J. L.* 783. In cases where the scope of authority of a servant or agent depends upon disputed matters of fact, the extent of such authority is ordinarily a question for the jury. *Dierkes* v. *Hauxhurst Land Co.,* 80 *Id.* 369." *Klitch* v. *Betts,* 89 *Id.* 352.

The proofs in this case demonstrate that the acts of the defendant's messenger boy with respect to the cellar door and the bicycle were well within the scope of the boy's apparent authority. The proofs do not show that the acts, though forbidden, were wanton or not performed in furtherance of the boy's duty to be ready to dispatch messages. There being a conflict of testimony, the issues were properly submitted to the jury, both as to the existence of the agency and the scope of the authority. *Tischler* v. *Steinholtz,* 99 *N. J. L.* 149, 152.

The appellant's contention that the presumption of agency was overcome by the uncontradicted proofs is not supported by the record. The young lady in charge of the office admitted plaintiff's visit to the office and his complaint about his fall, although she denied that she sent anyone to remedy the defect, and hence was not able to tell whether the doors and bar were out of adjustment because she was too busy to attend to the matter. Although there were three messenger boys employed by the defendant, but two were called to deny responsibility for the acts complained of. The jury may have inferred that the other boy was responsible for what happened, or they may not have believed those who testified for the defendant. The testimony offered in behalf of the defendant was clearly in contradiction of the testimony of plaintiff and a disinterested witness. The credibility of the young lady in charge of the office was weakened by her testimony that she was too busy to find out if the plaintiff had correctly related the circumstances of his injury, when all she would have had to do was to look out of the window—a trifling exertion for a properly sympathetic person. "Clearly under these circumstances, the truth of the testimony offered to rebut the presumption was for the jury, and, consequently, the entire question became one for the jury to solve, and the learned trial judge was right in refusing to direct a verdict for the defendant." *Crowell* v. *Padolsky*, 98 *N. J. L.* 553.

The judgment is affirmed, with costs.